No. 22-35549

IN THE

# United States Court of Appeals for the Ninth Circuit

MONTANA WILDLIFE FEDERATION; THE WILDERNESS SOCIETY; NATIONAL AUDUBON SOCIETY; NATIONAL WILDLIFE FEDERATION; AND MONTANA AUDUBON,

*Plaintiffs–Appellees,*

v.

DAVID BERNHARDT; DONATO JUDICE; BUREAU OF LAND MANAGEMENT; AND U.S. DEPARTMENT OF THE INTERIOR,

*Defendants,*

STATE OF WYOMING; WESTERN ENERGY ALLIANCE; AND STATE OF MONTANA,

*Intervenors–Defendants,*

ANSCHUTZ EXPLORATION CORPORATION,

*Intervenor–Defendant–
Appellant.*

On Appeal from the United States District Court
for the District of Montana, No. 4:18-cv-00069-BMM
Chief District Judge Brian M. Morris

## APPELLANT'S OPENING BRIEF

Andrew C. Lillie
Mark D. Gibson
HOLLAND & HART LLP
555 17th Street, Suite 300
Denver, CO 80202
Telephone: (303) 295-8121

Jessica Black Livingston
HOGAN LOVELLS US LLP
1601 Wewatta Street, Suite 900
Denver, CO 8020
Telephone: (303) 899-7300

*Attorneys for Appellant Anschutz Exploration Corporation*

# DISCLOSURE STATEMENT

Under Federal Rule of Appellate Procedure 26.1(a), undersigned counsel of record for Appellant Anschutz Exploration Corporation ("AEC") certify that AEC is a Delaware corporation with its principal place of business at 555 17th Street, Suite 2400, Denver, CO 80202. AEC is a wholly owned subsidiary of The Anschutz Corporation, a Delaware corporation with its principal place of business at 555 17th Street, Suite 2400, Denver, CO 80202.

Date: November 21, 2022

HOLLAND & HART LLP

*/s/ Andrew C. Lillie*
Andrew C. Lillie
Mark D. Gibson

HOGAN LOVELLS US LLP

*/s/ Jessica Black Livingston*
Jessica Black Livingston

i

# TABLE OF CONTENTS

**Page**

DISCLOSURE STATEMENT ...............................................................i

TABLE OF AUTHORITIES ..............................................................iv

INTRODUCTION ...............................................................................1

JURISDICTIONAL STATEMENT ....................................................3

STATUTORY AND REGULATORY AUTHORITIES ........................4

ISSUE PRESENTED ...........................................................................5

STATEMENT OF THE CASE ............................................................5

I.   AEC Acquires Federal Oil-and-Gas Leases in Wyoming .................5

II.  The Federation Sues to Wipe Out AEC's Leases—Without Naming
     AEC as a Party .............................................................................6

III. The District Court Cancels AEC's Leases and Denies AEC's Motion
     to Intervene to Protect Its Leases on Appeal......................................7

IV.  This Court Reverses ........................................................................9

SUMMARY OF THE ARGUMENT...................................................10

STANDARD OF REVIEW.................................................................11

ARGUMENT ......................................................................................12

I.   The district court could not, consistent with Rule 19 and due process,
     order BLM to vacate AEC's leases when AEC was not a party.....................12

A.    The district court lacked the power under Rule 19 to order BLM to cancel AEC's leases when AEC was not a party ....................................12

B.    The district court lacked the power under the Due Process Clause to order BLM to cancel AEC's leases when AEC was not a party.............15

III.  The Court should instruct the district court to fashion an appropriate remedy on remand, but it should make clear that the remedy must stop short of wiping out AEC's leases entirely .......................................17

A.    Vacating the leases would represent a break from this Court's and other courts' historical practice .................................................17

B.    Vacating the leases would not be appropriate under the two-factor *Allied Signal* test ...............................................................19

CONCLUSION ....................................................................24

STATEMENT OF RELATED CASES ...........................................26

CERTIFICATE OF COMPLIANCE .............................................27

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allied-Signal, Inc. v. NRC*,
  988 F.2d 146 (D.C. Cir. 1993)................................................................20

*Bob Marshall All. v. Lujan*,
  804 F. Supp. 1292 (D. Mont. 1992).....................................................18

*Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v.
  California*, 547 F.3d 962 (9th Cir. 2008) ............................................12

*Cal. Cmtys. Against Toxics v. EPA*,
  688 F.3d 989 (9th Cir. 2012) ........................................................20, 22

*Carmona v. Carmona*,
  544 F.3d 988 (9th Cir. 2008) ................................................................14

*Clement v. City of Glendale*,
  518 F.3d 1090 (9th Cir. 2008) ..............................................................16

*Conner v. Burford*,
  848 F.2d 1441 (9th Cir. 1988) ................................................17, 18, 22

*Ctr. for Biological Diversity v. U.S. Forest Serv.*,
  No. 2:17-cv-000372-MHW-KAJ, 2021 WL 855938
  (S.D. Ohio Mar. 8, 2021)................................................................18, 19

*Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*,
  276 F.3d 1150 (9th Cir. 2002) ..............................................................12

*Edmo v. Corizon, Inc.*,
  935 F.3d 757 (9th Cir. 2019) ................................................................11

iv

*Fox v. Vice*,
　563 U.S. 826 (2011)...........................................................11

*Hansberry v. Lee*,
　311 U.S. 32 (1940)...........................................................16

*Idaho Farm Bureau Fed'n v. Babbitt*,
　58 F.3d 1392 (9th Cir. 1995) .........................................20, 22

*Kettle Range Conservation Grp. v. BLM*,
　150 F.3d 1083 (9th Cir. 1998) ..........................................12

*Klamath-Siskiyou Wildlands Ctr. v. NOAA*,
　109 F. Supp. 3d 1238 (N.D. Cal. 2015)...........................20

*Lomayaktewa v. Hathaway*,
　520 F.2d 1324 (9th Cir. 1975) ..........................................12

*McCowen v. Jamieson*,
　724 F.2d 1421 (9th Cir. 1984) ............................................8

*Mont. Wildlife Fed'n v. Bernhardt*,
　No. 20-35658 (9th Cir. Oct. 16, 2020) ...............................8

*Mont. Wildlife Fed'n v. Bernhardt*,
　No. 20-35793 (9th Cir. Jan. 5, 2022)..............................10, 13, 14, 17

*Mullane v. Cent. Hanover Bank & Trust Co.*,
　339 U.S. 306 (1950).........................................................16

*N. Cheyenne Tribe v. Hodel*,
　851 F.2d 1152 (9th Cir. 1988) ..........................................17

*Or. Natural Desert Assoc. v. Zinke*,
　250 F. Supp. 3d 773 (D. Or. 2017) ...................................20

*Pit River Home & Agric. Coop. Ass'n v. United States*,
    30 F.3d 1088 (9th Cir. 1994) ...............................................................14

*Pit River Tribe v. U.S. Forest Serv.*,
    469 F.3d 768 (9th Cir. 2006) ................................................................18

*Pollinator Stewardship Council v. EPA*,
    806 F.3d 520 (9th Cir. 2015) ................................................................20

*Shermoen v. United States*,
    982 F.2d 1312 (9th Cir. 1992) .........................................................9, 13

*Smith v. L.A. Unified Sch. Dist.*,
    830 F.3d 843 (9th Cir. 2016) ................................................................11

*Taylor v. Sturgell*, 553 U.S. 880 (2008)...................................................16

*Turtle Island Restoration Network v. U.S. Dep't of Commerce*,
    672 F.3d 1160 (9th Cir. 2012) ...........................................................3, 4

*United States v. Afshari*,
    426 F.3d 1150 (9th Cir. 2005) ..............................................................23

*United States v. Thrasher*,
    483 F.3d 977 (9th Cir. 2007) ................................................................14

*W. Oil & Gas Ass'n v. EPA*,
    633 F.2d 803 (9th Cir. 1980) ................................................................23

*WildEarth Guardians v. Bernhardt*,
    501 F. Supp. 3d 1192 (D.N.M. 2020).............................................18, 19

*WildEarth Guardians v. Zinke*,
    368 F. Supp. 3d 41 (D.D.C. 2019)........................................................18

**Statutes**

28 U.S.C. § 1292 ...................................................................................3

28 U.S.C. § 1331 ...................................................................................3

Administrative Procedure Act,
    Pub. L. No. 49-404, 60 Stat. 237 ......................................................1

Federal Land Policy and Management Act of 1976,
    Pub. L. No. 94-579, 90 Stat. 2743 ....................................................1

**Rules**

Fed. R. App. P. 4(a)(1)(B) ..................................................................4, 9

Fed. R. Civ. P. 19(a)(1)–(2) .................................................................4

Fed. R. Civ. P. 19(a)(1)(B) ...............................................................13

Fed. R. Civ. P. 24(a)(2) ......................................................................4, 5

**Other Authorities**

Bryan A. Garner et al., *The Law of Judicial Precedent* (2016) ...............14

# INTRODUCTION

The Anschutz Exploration Corporation ("AEC") is an oil-and-gas exploration and development company with operations in Colorado, Utah, and Wyoming. In June 2018, the Bureau of Land Management conducted an oil-and-gas lease sale for federal parcels in Wyoming. During that sale, AEC paid over $1 million for leases spanning about 24,000 acres.

Plaintiffs Montana Wildlife Federation, the Wilderness Society, National Audubon Society, National Wildlife Federation, and Montana Audubon (collectively, the "Federation") sued BLM, the Department of Interior, and BLM and Interior officials in the District of Montana. Among other agency actions, the Federation challenged the June 2018 Wyoming lease sale under the Administrative Procedure Act.[1] It argued that the sale violated the Federal Land Policy and Management Act[2] because certain procedures BLM used to conduct the sale allegedly conflict with applicable BLM resource-management plans. Among other requested remedies, the Federation sought an order directing BLM to cancel AEC's and the other lessees' oil-and-gas leases. Despite seeking that relief, the Federation never named or moved to join AEC and the other lessees as parties to the case.

---

[1] Administrative Procedure Act, Pub. L. No. 49-404, 60 Stat. 237 (codified in scattered sections of 5 U.S.C.).

[2] Federal Land Policy and Management Act of 1976, Pub. L. No. 94-579, 90 Stat. 2743 (codified as amended at 43 U.S.C. §§ 1700–1787).

In May 2020, the district court ruled in the Federation's favor and ordered BLM to cancel the leases that BLM had issued during certain lease sales—including the leases AEC had acquired during the June 2018 Wyoming lease sale. The court entered that order even though neither AEC nor any other lessee was a party to the case, and even though AEC was not provided notice or an opportunity to be heard before being stripped of its leasehold interests.

Less than two months after the district court issued its order, AEC moved to intervene to appeal the court's ruling. The district court, however, denied AEC's motion on two grounds. First, it determined that AEC's interests were already adequately represented by the Western Energy Alliance, an oil-and-gas trade association of which AEC is a member. Second, it determined that AEC's motion was untimely.

Earlier this year, this Court reversed. It rejected the district court's conclusion that AEC's motion to intervene was untimely. And more importantly for this merits appeal, the Court also rejected the district court's conclusion that AEC's interests were adequately represented. As the Court explained, AEC had invested considerable resources to acquire and develop the leases that the Federation seeks to vacate, and AEC has a substantial due-process interest in the outcome of the litigation.

The Court directed the district court to allow AEC to participate in the appeal from the court's ruling. After the district court granted AEC's motion to intervene on remand, AEC timely filed this appeal.

But this appeal is hardly starting from scratch. The Court has already completed briefing and heard oral argument in the appeals from the district court's order filed by the Federal Defendants (No. 20-35609), the State of Wyoming (No. 20-35615), and the Western Energy Alliance (No. 20-35614). Rather than rehash the arguments raised in those briefs, AEC adopts the briefing on the merits as provided by Federal Defendants, Wyoming, and the Alliance.

AEC submits this short brief to make just two points about the appropriate remedy if this Court were to uphold the district court's determination that the June 2018 Wyoming lease sale violated the APA and FLPMA. *First*, the district court erred in ordering BLM to vacate AEC's leases at a time when AEC was not a party, because under Federal Rule of Civil Procedure 19, this Court's precedents, and due process, the district court lacked the power to order that remedy. *Second*, on remand, this Court should direct the district court to fashion an appropriate remedy short of vacating AEC's leases.

## JURISDICTIONAL STATEMENT

The district court had subject-matter jurisdiction over the Federation's claims under 28 U.S.C. § 1331 because those claims arise under the APA. This Court's jurisdiction rests on 28 U.S.C. § 1292 because the district court's order had the "substantial effect" of an injunction: the order compelled BLM to cancel the leases issued under the challenged lease sales. *See Turtle Island Restoration Network v. U.S. Dep't*

- 3 -

*of Commerce*, 672 F.3d 1160, 1165 (9th Cir. 2012). The district court entered its order on May 22, 2020. 1-ER-2. AEC timely filed a protective notice of appeal from that order on July 20, 2020. 2-ER-93; see Fed. R. App. P. 4(a)(1)(B). On remand, the district court granted AEC's motion to intervene to participate in this appeal on July 5, 2022. 2-ER-43. AEC timely filed its notice of appeal on July 11, 2022. 3-ER-314–15.

## STATUTORY AND REGULATORY AUTHORITIES

**Federal Rule of Civil Procedure 19(a)(1)–(2)** provides:

(a) Persons Required to Be Joined If Feasible

(1) Required Party. A person who is subject to service of process whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

(2) Joinder by Court Order. If a person has not been joined as required, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.

**Federal Rule of Civil Procedure 24(a)(2)** provides:

(a) Intervention of Right. On timely motion, the court must permit anyone to intervene who … (2) claims an interest relating to the property or

transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

## ISSUE PRESENTED

Did the district court err in ordering BLM to cancel AEC's leases?

## STATEMENT OF THE CASE

### I.    AEC Acquires Federal Oil-and-Gas Leases in Wyoming

AEC focuses on responsible development of oil-and-gas resources throughout the Rocky Mountain region. 2-ER-164. It is actively involved in a drilling and development program involving federal leaseholds in the Powder River Basin of Wyoming. 2-ER-164. AEC also holds federal leases in the Big Horn, Wind River, and Green River Basins of Wyoming. 2-ER-164.

To carry out the directives of FLPMA, BLM develops, maintains, and revises resource-management plans ("RMPs"). 1-ER-5. BLM revised and amended several RMPs in 2015 to afford protections to the sage-grouse. 1-ER-6. These updated RMPs directed BLM to prioritize oil-and-gas leasing and development on lands outside sage-grouse habitat. 1-ER-7. In December 2017, BLM issued Instruction Memorandum ("IM") 2018-026 to clarify how BLM would implement this prioritization objective. 1-ER-7–8, 11.

Using the procedures in IM 2018-026, BLM conducted a lease sale in June 2018 for parcels in Wyoming. 1-ER-13–14. During that sale, AEC paid over $1 million for leases on about 24,000 acres. 2-ER-164. AEC spent about three years conducting technical and scientific operational work related to these leases. 2-ER-164. In total, it invested about $1.5 million preparing to acquire, acquiring, and analyzing development of these leases. 2-ER-164.

## II.   The Federation Sues to Wipe Out AEC's Leases—Without Naming AEC as a Party

The Federation sued the U.S. Department of Interior, BLM, and Interior and BLM officials in the District of Montana under the APA. 2-ER-268, 271. The Federation argued (among other things) that the 2018 Wyoming lease sale violated FLPMA because the procedures in IM 2018-026 that BLM relied on to conduct the sale contradict the RMPs' requirement to prioritize leasing outside greater sage-grouse habitat. 2-ER-199. In its prayer for relief, the Federation asked the court to set aside all the leases sold in the challenged sales—including the leases AEC acquired during the June 2018 Wyoming lease sale. 2-ER-244.

After the Federation sued, the Western Energy Alliance moved to intervene. 2-ER-264. "The Alliance is a non-profit, regional trade association representing more than 300 companies engaged in all aspects of environmentally responsible exploration and production of oil and natural gas in the western United States." 2-ER-248.

The Alliance sought intervention to protect both its "organizational interest in maintaining regulatory certainty in BLM's oil and gas leasing program" and its members' "significant, monetary interests in the challenged federal oil and gas leases on the federal lands at issue." 2-ER-253–54. AEC is an Alliance member. 2-ER-72. The district court granted the Alliance's motion to intervene. 2-ER-195–96.

Even though the Federation sought to vacate AEC's and the other lessees' leasehold interests, it did not name AEC or the other lessees as parties to the case. Nor did any party ever move to join AEC or the other lessees as required parties under Federal Rule of Civil Procedure 19.

## III. The District Court Cancels AEC's Leases and Denies AEC's Motion to Intervene to Protect Its Leases on Appeal

In May 2020, the district court ruled in the Federation's favor, determining that IM 2018-026, and the lease sales conducted under it, violate FLPMA because they conflict with the RMPs' requirement to prioritize oil-and-gas leasing outside sage-grouse habitat. 1-ER-21–30. As a remedy, the court vacated IM 2018-026. 1-ER-31.

But the court also went a step further. It ordered BLM to "cancel AEC's oil and gas leases in Wyoming." 2-ER-73. In doing so, the court adjudicated AEC's rights—

even though AEC was not a party, and even though AEC was not afforded notice or an opportunity to be heard before being stripped of its property rights.[3]

Shortly after learning about the district court's order, AEC moved to intervene solely to appeal the court's ruling. 2-ER-166.[4] AEC first explained that it is a required party under Rule 19, meaning that the district court should have *sua sponte* joined AEC as a party. 2-ER-165–70; *see McCowen v. Jamieson*, 724 F.2d 1421, 1424 (9th Cir. 1984) (holding that whether an entity is a required party under Rule 19 "is sufficiently important that it can be raised at any stage of the proceedings— even *sua sponte*"); Fed. R. Civ. P. 19(a)(2) ("If a person has not been joined as required, the court must order that the person be made a party."). AEC also explained both that it had a right to intervene under Rule 24(a)(2) and that it should have been permitted to intervene under Rule 24(b)(1)(B). 2-ER-165–66, 170–82.

The district court denied AEC's motion. 2-ER-92. The court determined that the Alliance adequately represents AEC's interests, so AEC was neither required to

---

[3] The district court stayed pending appeal the part of its order directing BLM to cancel the leases sold during the June 2018 Wyoming lease sale. 2-ER-66. Instead, the court has suspended all work to develop and produce oil and gas from those leases. 2-ER-66.

[4] AEC also filed a protective notice of appeal from the district court's ruling. 2-ER-93–94. This Court dismissed that appeal (No. 20-35658) because AEC was not yet a party to the case below. Order at 3–4, *Mont. Wildlife Fed'n v. Bernhardt*, No. 20-35658 (9th Cir. Oct. 16, 2020), ECF No. 15.

be joined under Rule 19 nor entitled to intervene under Rule 24. 2-ER-87–91; *see Shermoen v. United States*, 982 F.2d 1312, 1318 (9th Cir. 1992) ("In assessing an absent party's necessity under Fed.R.Civ.P. 19(a), the question whether that party is adequately represented parallels the question whether a party's interests are so inadequately represented by existing parties as to permit intervention of right under Fed.R.Civ.P. 24(a)."). The court reached that determination even though the Alliance had not raised AEC's arguments that the court cannot lawfully order BLM to vacate the leases, consistent with Rule 19 and due process, because neither AEC nor the other lessees were parties to the case. The court also determined that AEC's motion was untimely. 2-ER-89–92. The court reached that determination even though AEC moved to intervene within the time allowed for filing a notice of appeal from the court's merits ruling. *See* Fed. R. App. P. 4(a)(1)(B).

A short time later, the court amended its order denying AEC's motion to intervene to clarify that AEC's motion to stay the court's merits ruling pending appeal was now moot. 2-ER-81. AEC timely appealed. 2-ER-56–57.

## IV. This Court Reverses

One of the central issues on appeal was whether the district court erred in determining that AEC's interests were adequately represented. The parties briefed that issue extensively. Opening Br. at 11–20, *Mont. Wildlife Fed'n v. Bernhardt*, No. 20-35793 (9th Cir. Dec. 14, 2020), ECF No. 5; Answering Br. at 25–34, *Mont. Wildlife*

*Fed'n v. Bernhardt*, No. 20-35793 (9th Cir. Jan. 14, 2021), ECF No. 10; Reply Br. at 14–27, *Mont. Wildlife Fed'n v. Bernhardt*, No. 20-35793 (9th Cir. Mar. 8, 2021), ECF No. 21.

Following briefing and oral argument, this Court reversed. Mem. Op. at 1, *Mont. Wildlife Fed'n v. Bernhardt*, No. 20-35793 (9th Cir. Jan. 5, 2022), ECF No. 34-1 [hereinafter Mem. Op.]. The Court concluded that AEC had shown both a "significantly protectable interest related to the subject of the action" and that AEC "may have that interest impaired by the disposition of the action." *Id.* at 3. The Court also determined that no other party adequately represented AEC's interests, *id.* at 4–5, explaining that "AEC has invested considerable resources to acquire and develop the leasehold interest now jeopardized by this litigation, and thus has a substantial due process interest in the outcome of this litigation." *Id.* at 5 (internal quotations omitted). The Court thus reversed the district court's order denying AEC's motion to intervene, paving the way for AEC to bring this appeal. *Id.*

## SUMMARY OF THE ARGUMENT

The district court determined that BLM violated the APA and FLPMA when it conducted the June 2018 Wyoming lease sale. For all the reasons set out by Federal Defendants, Wyoming, and the Alliance, that ruling was wrong and should be reversed. But even if this Court were to uphold the district court's determination that the lease sale was unlawful, it should still reverse the district court's remedy

directing BLM to vacate AEC's and the other lessees' leases. Neither AEC nor any other lessee was a party to the case when the district court ordered BLM to cancel the leases. And the law-of-the-case doctrine compels the conclusion that the district court thus lacked the power, under Federal Rule of Civil Procedure 19, to order vacatur of AEC's leases. The Court should therefore remand with instructions to fashion a new remedy. In doing so, it should make clear that wiping out the leases is a bridge too far, and it should instruct the district court that its remedy must be something short of lease vacatur. Those instructions would align with this Court's precedents. They would also recognize that vacatur would have devastating consequences for AEC, the other nonparty lessees, the federal government, the State of Wyoming, and affected communities. Because those consequences outweigh the seriousness of BLM's purported infractions, vacating the leases should be off the table.

## STANDARD OF REVIEW

The district court's order directing BLM to cancel AEC's leases is reviewed for abuse of discretion. *Edmo v. Corizon, Inc.*, 935 F.3d 757, 785 (9th Cir. 2019). A district court abuses its discretion when it commits legal error. *Fox v. Vice*, 563 U.S. 826, 839 (2011); *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 853 (9th Cir. 2016).

# ARGUMENT

## I. The district court could not, consistent with Rule 19 and due process, order BLM to vacate AEC's leases when AEC was not a party.

### A. The district court lacked the power under Rule 19 to order BLM to cancel AEC's leases when AEC was not a party.

This Court has declared that, under Rule 19, "[n]o procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable." *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir. 1975). More recently, the Court has reiterated the "fundamental principle" that "a party to a contract is necessary, and if not susceptible to joinder, indispensable to litigation seeking to decimate that contract." *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150, 1157 (9th Cir. 2002); *accord Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. California*, 547 F.3d 962, 977 (9th Cir. 2008) (holding that Rule 19 "necessarily confines the relief that may be granted on [the plaintiff's] claims to remedies that do not invalidate the licenses that have already been issued to the absent" license holders); *Kettle Range Conservation Grp. v. BLM*, 150 F.3d 1083, 1087 (9th Cir. 1998) (per curiam) ("[T]he district court correctly determined that it was without authority to rescind the contract in the absence of joinder of the private parties …."). Under these precedents, because AEC was a required party under Rule 19 that had not been joined as a party to the case, the

- 12 -

district court lacked the power to order BLM to cancel AEC's leases. The court erred by doing so.

In the past, the Federation has resisted that conclusion by arguing that AEC is not a required party under Rule 19. This Court, however, has already determined, and the Federation has never disputed, that AEC "claims an interest relating to the subject matter of the action." Fed. R. Civ. P. 19(a)(1)(B); Mem. Op. at 3. The Court has also determined that AEC's interests may be impaired by the Federation's suit. Mem. Op. at 3. The Federation's only contention was that AEC is not a required party under Rule 19, because the Alliance adequately represents AEC's interests. Answering Br. at 25–34, *Mont. Wildlife Fed'n v. Bernhardt*, No. 20-35793 (9th Cir. Jan. 14, 2021), ECF No. 10; *id.* at 33 (arguing that AEC's Rule 19 argument lacks merit because the Alliance "adequately represents Anschutz's interests in this case"); 2-ER-113–20 (same).

But this Court rejected that argument. Mem. Op. at 4–5.[5] That ruling is now the law of the case:

> The law of the case doctrine states that the decision of an appellate court on a legal issue must be followed in all subsequent proceedings in the same case. The doctrine is a judicial invention designed to aid in the efficient operation of court affairs. Under the doctrine, a court is generally

---

[5] In the prior appeal, the Court evaluated whether AEC's interests were adequately represented under Rule 24, but this Court has held that the adequate-representation issue is the same under Rule 19 and Rule 24. *Shermoen*, 982 F.2d at 1318.

> precluded from reconsidering an issue previously decided by the same
> court, or a higher court in the identical case. For the doctrine to apply, the
> issue in question must have been decided explicitly or by necessary impli-
> cation in the previous disposition.

*United States v. Thrasher*, 483 F.3d 977, 981 (9th Cir. 2007). The doctrine applies

here because whether AEC's interests were adequately represented has been decided

explicitly by this Court. Mem. Op. at 4–5; *accord Carmona v. Carmona*, 544 F.3d

988, 997 (9th Cir. 2008) (stating that the law-of-the-case doctrine applies, as here,

to "successive appeals in the same suit"); Bryan A. Garner et al., *The Law of Judicial*

*Precedent* at 465 (2016) ("When an appellate court decides a case that later returns

there by appeal or writ of error, only questions that were not determined in the pre-

vious decision will be considered. A point of law already adjudicated becomes the

law of the case and may not be reversed or departed from at any later stage without

a relevant exception to the doctrine.").

There is no reason to deviate from that ruling now. This Court has explained

that a court need not follow the law of the case if evidence has since come to light

that makes the analysis "substantially different," if the controlling authority has since

changed, or if the decision was "clearly erroneous and would work a manifest injus-

tice." *Pit River Home & Agric. Coop. Ass'n v. United States*, 30 F.3d 1088, 1096–97

(9th Cir. 1994). None of these exceptions applies here.

No new evidence has since come to light in the district court that would call into question the Court's determination that AEC's interests were not adequately represented. The law has not changed. And the Court's unanimous decision was a far cry from clearly erroneous, nor would it work a manifest injustice. On that score, it's worth noting that the Federation did not even petition for panel rehearing and rehearing en banc. That omission suggests that the Federation itself does not view the Court's determination as clearly erroneous, much less so erroneous that a manifest injustice would result from allowing that determination to stand.

In short, this Court has held—over and over again—that a district court lacks the power to cancel a lease or other contract when one of the contracting parties is a required party under Rule 19 but is not a party to the litigation. The law-of-the-case doctrine establishes that AEC was a required party under Rule 19. Yet the district court ordered BLM to cancel its oil-and-gas leases with AEC at a time when AEC was not a party to the litigation. That was legal error. Regardless of how the Court resolves the merits of the appeal, the Court should at least reverse the district court's order directing BLM to cancel AEC's leases and remand.

## B. The district court lacked the power under the Due Process Clause to order BLM to cancel AEC's leases when AEC was not a party.

The district court entered partial summary judgment for the Federation—purportedly binding on AEC and the other lessees—ordering BLM to cancel the lessees'

leasehold interests, even though AEC was not a party to the case. But it is a "principle of general application in Anglo-American jurisprudence that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Hansberry v. Lee*, 311 U.S. 32, 40 (1940). It is thus blackletter law that "the litigant whose rights have thus been adjudicated has been afforded such notice and opportunity to be heard as are requisite to the due process which the Constitution prescribes." *Id.*; *accord Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950) (holding that at a minimum, due process requires "that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case"); *Clement v. City of Glendale*, 518 F.3d 1090, 1093 (9th Cir. 2008) (holding that under the Due Process Clause, "the government may not take property like a thief in the night; rather, it must announce its intentions and give the property owner a chance to argue against the taking").

AEC was not a party when the district court entered its order. So under the bedrock due-process rule that "a litigant is not bound by a judgment to which she was not a party," *Taylor v. Sturgell*, 553 U.S. 880, 898 (2008), the district court lacked the power to enter a binding judgment that would deprive AEC of its leasehold interests. Indeed, this Court has already recognized that the district court erred in denying AEC's motion to intervene because AEC "has a substantial due process

interest in the outcome of this litigation by virtue of its contract with the federal government." Mem. Op. at 5. The district court thus erred in entering partial summary judgment for the Federation that purported to bind AEC and cancel its contractual rights at a time when AEC was not a party.

## II. The Court should instruct the district court to fashion an appropriate remedy on remand, but it should make clear that the remedy must stop short of wiping out AEC's leases entirely.

### A. Vacating the leases would represent a break from this Court's and other courts' historical practice.

The district court determined that the June 2018 Wyoming lease sale violated FLPMA because the procedures in IM 2018-026 that BLM relied on to conduct the sale contradict the RMPs' requirement to prioritize leasing outside greater sage-grouse habitat. 1-ER-21–30.

In cases like this one, this Court's and other courts' practice has been to order a remedy short of vacating the challenged property and contractual rights entirely. In *Northern Cheyenne Tribe v. Hodel*, for example, this Court noted that the district court's order merely suspended coal-mining operations; it did not entirely void the coal-mining leases. 851 F.2d 1152, 1154 (9th Cir. 1988). And in *Conner v. Burford*, the Court went out of its way to ensure that the district court's order only suspended activities on the leases, thus avoiding the "unnecessarily harsh result of completely

divesting the lessees of their property rights." 848 F.2d 1441, 1460–61 & n.50 (9th Cir. 1988).

More-recent cases are to the same effect. In *WildEarth Guardians v. Zinke*, for instance, the plaintiffs argued that various BLM lease sales violated NEPA and asked the court to vacate the leases. 368 F. Supp. 3d 41, 55 (D.D.C. 2019). The court agreed that BLM's environmental assessments accompanying the lease sales violated NEPA. *Id.* at 84. Even so, it refused to vacate the leases. And even more recently, in *WildEarth Guardians v. Bernhardt*, despite finding deficiencies in IM 2018-034, the court refused to vacate the leases, noting that doing so would be a "gross over-exaggeration and a mark of judicial overreach." 501 F. Supp. 3d 1192, 1225 (D.N.M. 2020).

By contrast, vacating contractual and real-property rights is normally reserved for circumstances when the agency acted *outside its statutory authority*. *See, e.g.*, *Pit River Tribe v. U.S. Forest Serv.*, 469 F.3d 768, 775–76, 784, 787–88 (9th Cir. 2006) (vacating leases of named defendant because "the agencies violated NHPA by failing to complete the necessary review before extending the leases"); *Bob Marshall All. v. Lujan*, 804 F. Supp. 1292, 1294–98 (D. Mont. 1992) (vacating where agency issued leases to party defendants without preparing EIS or biological opinion).

But when, as here, the agency's error was a failure to sufficiently analyze or support its action, vacatur is not mandated. *See Ctr. for Biological Diversity v. U.S.*

*Forest Serv.*, No. 2:17-cv-000372-MHW-KAJ, 2021 WL 855938, at *1–4 (S.D. Ohio Mar. 8, 2021) (vacatur improper in oil-and-gas leasing case when lessee a party and government did not completely omit required NEPA analysis). In this case, the district court concluded that BLM had failed to adhere to the 2010 RMP sage-grouse-prioritization requirement. 1-ER-21–30. That is not a statutory-authority problem; and it is a problem that certainly can be addressed without *cancelling the leases*, a step far beyond vacatur of BLM's decision. Rather than leaving the leases in place and remanding for BLM to revisit the June 2018 Wyoming lease sale to apply the RMP's prioritization requirement, the district court outright cancelled the leases. That was error. "[V]acating the leases is a gross over-exaggeration and a mark of judicial overreach" when a less drastic remedy could be fashioned. *WildEarth Guardians*, 501 F. Supp. 3d at 1225.

To ensure that the district court's remedy aligns with the historical practice both of this Court and of courts around the country, the Court should instruct the district court on remand that its remedy must stop short of canceling AEC's leases outright.

## B.   Vacating the leases would not be appropriate under the two-factor *Allied Signal* test.

Vacating the leases would be inconsistent not only with this Court's historical practice but also with the two-factor *Allied Signal* test.

That test sets out two equitable factors for courts to consider when deciding whether to vacate agency action: (1) the seriousness of the agency's errors; and (2) the disruptive consequences that would result from vacatur. *Allied-Signal, Inc. v. NRC*, 988 F.2d 146, 150–51 (D.C. Cir. 1993); *Cal. Cmtys. Against Toxics v. EPA*, 688 F.3d 989, 993–94 (9th Cir. 2012) (employing the *Allied Signal* test). On the seriousness factor, seriousness "should be measured by the effect the error has in contravening the purposes of the statute in question." *Or. Natural Desert Assoc. v. Zinke*, 250 F. Supp. 3d 773, 774 (D. Or. 2017). On the consequences factor, "courts may decline to vacate agency decisions when vacatur would cause serious and irremediable harms that significantly outweigh the magnitude of the agency's error." *Klamath-Siskiyou Wildlands Ctr. v. NOAA*, 109 F. Supp. 3d 1238, 1242 (N.D. Cal. 2015). Courts should weigh other practical concerns too. *See, e.g.*, *Cal. Cmtys.*, 688 F.3d at 993–94 (noting that delay to "much needed power plant," possibly leading to blackouts, was a "severe" consequence of vacatur that should be considered in the balance). Ultimately, as this Court has explained, whether to vacate agency action boils down to fairness and equity, and a court should leave agency action in place "when equity demands" that it do so. *Pollinator Stewardship Council v. EPA*, 806 F.3d 520, 532 (9th Cir. 2015); *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1405 (9th Cir. 1995) (holding that "when equity demands," an agency's decision may "be left in place while the agency follows the necessary procedures"). Applying this

equitable balancing here, even if the Court were to conclude that BLM erred, the consequences flowing from vacatur would be calamitous. Equity thus counsels leaving the leases in place.

As for seriousness, BLM can remedy its purported error in failing to adhere to the RMP's prioritization requirement by reconsidering prioritization on remand. *See* Federal Defendants' Opening Br. at 49, *Mont. Wildlife Fed'n v. Bernhardt*, No. 20-35609 (9th Cir. Nov. 16, 2020), ECF No. 19.

On the other side of the ledger, vacatur would severely harm AEC and the other lessees. It would destroy AEC's and the other lessees' real-property rights—property rights that AEC spent over $1 million to acquire. 2-ER-164. It would strip AEC of about 24,000 acres. 2-ER-164. It would wipe out AEC's investments in these leases. AEC spent about three years conducting technical and scientific operational work related to these leases. 2-ER-164. In total, it invested about $1.5 million preparing to acquire, acquiring, and analyzing development of these leases. 2-ER-164. Vacating the leases would lead to lost revenue, potential delay in revenue, and harm to efficient development of contiguous assets.

Vacatur would also severely harm federal and state governments. Cancelling the leases would require BLM to refund millions of dollars. Federal Defendants' Opening Br. at 52, *Mont. Wildlife Fed'n v. Bernhardt*, No. 20-35609 (9th Cir. Nov. 16, 2020), ECF No. 19.

This creates grave and possibly insurmountable problems. For example, the lease sales provided over millions of dollars in revenue for Wyoming, which translate to vital funding for school children, programs for the elderly and disabled, and critical infrastructure for small towns and municipalities. Wyoming's Opening Br. at 43–46, *Mont. Wildlife Fed'n v. Bernhardt*, No. 20-35609 (9th Cir. Nov. 16, 2020), ECF No. 15. Because Wyoming has already spent these funds, vacatur would mean reduced future revenues to Wyoming—revenues that would have gone toward funding vital services for the state's citizens.

All these harms are potentially irreparable. There is no guarantee, for instance, that once the leases are vacated, BLM would again offer them for sale, that AEC or any other lessee could buy them again, or that the federal or state governments could recoup their lost revenue streams.

Ninth Circuit precedent supports the conclusion that vacating the leases would not be an appropriate remedy under the *Allied Signal* test. In analogous cases applying that test, this Court has remanded without vacatur. *See, e.g.*, *Conner*, 848 F.2d at 1461 (declining to vacate because agency likely to correct procedural errors on remand); *Cal. Cmtys.*, 688 F.3d at 993–94 (9th Cir. 2012) (remanding after EPA conceded errors implementing final rule and finding vacatur would delay operation of critical power plant, be "economically disastrous," and likely create blackouts); *Idaho Farm Bureau Fed'n*, 58 F.3d at 1405–06 (concluding that equity demanded

regulation be left alone while procedural errors were remedied because failure to do so could have wiped out entire snail species); *W. Oil & Gas Ass'n v. EPA*, 633 F.2d 803, 813 (9th Cir. 1980) (holding vacatur would have thwarted "the operation of the Clean Air Act" in California "during the time the deliberative process [was] reenacted"); *United States v. Afshari*, 426 F.3d 1150, 1156 (9th Cir. 2005) (holding it is "well-established" that APA does not compel vacatur upon finding of legal violation or procedural flaw).

Simply put, vacatur would have devastating and potentially irreparable consequences for AEC, other lessees, the federal government, the State of Wyoming, and affected communities. When weighed against the seriousness of BLM's purported infractions, the severity of these disruptive consequences shows—and Ninth Circuit precedent confirms—that the district court abused its discretion in directing BLM to cancel the leases entirely.

*       *       *

Because canceling the leases flouts this Court's historical practice and flunks the *Allied Signal* test, the Court should instruct the district court on remand to fashion an appropriate remedy while making clear that canceling the leases outright is not on the table.

At a minimum, however, if the Court were to reject these contentions and determine that vacating AEC's leases could still be an appropriate remedy on remand,

the Court should instruct the district court to give AEC the opportunity to create a full evidentiary record below as to why vacating AEC's leases would not be appropriate through, for example, supplemental briefing, an evidentiary hearing, or any other means this Court or the district court sees fit.

## CONCLUSION

For all these reasons, if the Court were to uphold the district court's determination that BLM's June 2018 Wyoming lease sale was unlawful, it should nonetheless reverse that part of the district court's order directing BLM to vacate AEC leases. The district court lacked the power to order that remedy, consistent with Rule 19 and due process, because AEC was not yet a party to the case. The Court should therefore remand with instructions to revisit what remedy to impose for BLM's purported infractions.

In doing so, the Court should make clear that the remedy must be something short of outright canceling AEC's leases, both because that remedy conflicts with this Court's historical practice, and because that remedy cannot be squared with the considerations required under *Allied Signal*. At a minimum, the Court should instruct the district court to give AEC the opportunity on remand to develop a full factual record as to why cancelling AEC's leases would not be appropriate.

Date: November 21, 2022

HOLLAND & HART LLP

*/s/ Andrew C. Lillie*
Andrew C. Lillie
Mark D. Gibson

HOGAN LOVELLS US LLP

*/s/ Jessica Black Livingston*
Jessica Black Livingston

*Attorneys for Appellant Anschutz*
*Exploration Corporation*

## STATEMENT OF RELATED CASES

These cases relate to this case under Circuit Rule 28-2.6:

- *Mont. Wildlife Fed'n v. Bernhardt*, No. 20-35609 (BLM's appeal from the district court's merits ruling).

- *Mont. Wildlife Fed'n v. Bernhardt*, No. 20-35614 (Alliance's appeal from the district court's merits ruling).

- *Mont. Wildlife Fed'n v. Bernhardt*, No. 20-35615 (Wyoming's appeal from the district court's merits ruling).

- *Mont. Wildlife Fed'n v. Bernhardt*, No. 22-35365 (Wyoming's appeal from the district court's phase-two order).

- *Mont. Wildlife Fed'n v. Bernhardt*, No. 22-35366 (BLM's appeal from the district court's phase-two order).

- *Mont. Wildlife Fed'n v. Bernhardt*, No. 22-35367 (Alliance's appeal from the district court's phase-two order).

- *Mont. Wildlife Fed'n v. Bernhardt*, No. 22-35368 (Chesapeake's appeal from the district court's phase-two order).

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
### Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** | 22-35549

I am the attorney or self-represented party.

**This brief contains** | 5825 | **words**, excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

(●) complies with the word limit of Cir. R. 32-1.

( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

( ) is an **amicus** brief and complies with the word limit of Fed. R. App. P.
29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because
*(select only one):*

  ( ) it is a joint brief submitted by separately represented parties;

  ( ) a party or parties are filing a single brief in response to multiple briefs; or

  ( ) a party or parties are filing a single brief in response to a longer joint brief.

( ) complies with the length limit designated by court order dated [          ].

( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ Andrew C. Lillie          **Date** | 11/21/2022

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8** | *Rev. 12/01/2018*